1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT WHITLEY, | ) NO. EDCV 09-02283 SS |
|         Plaintiff, | ) |
|     v. | ) **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security Administration, | ) |
|         Defendant. | ) |

**I.**

**INTRODUCTION**

Plaintiff Scott Whitley ("Plaintiff") brings this action seeking to reverse the decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying his application for a period of Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). Alternatively, Plaintiff asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PRIOR PROCEEDINGS

On May 22, 2006, Plaintiff filed an application for DIB and SSI claiming that he became disabled beginning September 30, 2001. (Administrative Record ("AR") 10).  The Agency initially denied his application on August 4, 2006. (Id.).  After submitting a request for reconsideration, the application was again denied on December 26, 2006. (Id.).  On February 14, 2007, Plaintiff requested a hearing.  The hearing was held before Administrative Law Judge ("ALJ") Gene Duncan on January 23, 2008. (AR 18).  Plaintiff appeared with counsel and testified.  (AR 21-24, 34-46).  Also testifying were Samuel Landau, a medical expert, Gregory S. Jones, a vocational expert, and Gail Wagner, Plaintiff's fiancé.  (AR 25-33, 47-64).  On February 15, 2008, the ALJ issued a decision denying benefits.  (AR 7-17).  Plaintiff sought review before the Appeals Council, which denied the request on November 9, 2009.  (AR 1-3).  On December 16, 2009, Plaintiff filed the instant action.

//
//
//
//
//
//
//
//
//
//

2

### III.

### FACTUAL BACKGROUND

Plaintiff was born on June 27, 1958, and was forty-three years old at the time of the alleged disability onset date. (AR 16). He has a tenth grade education and is able to communicate in English. (Id.). Plaintiff formerly worked as a construction worker. (Id.). Plaintiff's claimed impairments include rheumatoid arthritis, Hepatitis C, a back injury, arthritis, and high blood pressure. (AR 116).

## A.   **Plaintiff's Medical History**

In May 2005, while serving a sixteen-month sentence for a DUI conviction at Calipatria State Prison, Plaintiff was treated for pain and trouble breathing. (AR 134). The prison doctors prescribed Malox, Metamucil, Motrin, Penicillin, and Prilosec to Plaintiff. (Id.). Both before and after his incarceration, Plaintiff visited Rancho Springs Medical Center for treatment of back pain. (AR 119, 133, 143). At Rancho Springs, he received x-rays, a CT scan, and medication. (AR 133, 143). Plaintiff was treated by Dr. Moody, Dr. Wayne, Dr. Odubela, and Dr. Simms, all affiliated with Rancho Springs Medical Center. (AR 148).

Plaintiff listed Dr. Jesus Lucas as his primary physician. (AR 234). Dr. Lucas ordered numerous tests through Quest Diagnostics, UniLab, and Cardiopulmonary Diagnostic Services. (AR 329, 339, 349, 353, 354, 356, 363, 364, 366, 367, 369, 370, 371, 375). Dr. Lucas is listed as prescribing Plaintiff various medications for herpes, an infection, and an undisclosed stomach ailment. (AR 149).

On May 26, 2006, Dr. Lucas completed a Consent for Release of Medical Information form. (AR 336). In this one-page, fill-in-the-box form, Dr. Lucas diagnosed Plaintiff with degenerative disc disease, arthritis, and Hepatitis C. (Id.). The form does not indicate what type of examination was conducted to reach these conclusions. (Id.). The boxes did not provide space for elaboration. (Id.). In the "prognosis and recommendations for treatment" box, Dr. Lucus found Plaintiff "temporarily disab[led] at least until 9/1/06 while the above work-up and therapy are being carried out." (Id.).

On March 29, 2007, Dr. Lucas completed an Authorization to Release Medical Information form. (AR 335). Dr. Lucas again concluded in this check-off-the-box form that Plaintiff does not require someone to care for him, and that Plaintiff could provide care to children in his home. (Id.). Dr. Lucas found that Plaintiff did not have any limitations that affect his ability to work or participate in education or training. However, Dr. Lucas also checked the box indicating that Plaintiff was not, in fact, able to work. Dr. Lucas did not provide any other specific diagnosis on this release form. (Id.).

**B.    Consultative Examinations**

At the Agency's request, Dr. Thomas J. Sabourin completed an Orthopedic Consultation on July 25, 2006. (AR 188-92). The examination included formal physical examination procedures and observations of Plaintiff's movements. (AR 189). Dr. Sabourin found that Plaintiff had normal gait and did not need an assistive device. (Id.). Dr. Sabourin performed x-rays which showed no significant

4

decrease in the disc spaces of Plaintiff's back except for some perhaps slight decrease at L5-S1.  (AR 191).   The examination revealed that Plaintiff's range of motion was normal in his extremities.  (AR 190-91). Furthermore, Dr. Sabourin found that Plaintiff had no manipulative limitations.  (AR 192).   Dr. Sabourin concluded that Plaintiff's symptoms were "somewhat disproportionate to the determinable condition" and that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, and is capable of standing, walking, or sitting for six out of eight hours.  (Id.).

On August 1, 2006, Dr. A.W. Lizarraras completed a Physical Residual Functional Capacity ("RFC") Assessment after reviewing medical evidence in the file.  (AR 197-202).   Dr. Lizarraras found that Plaintiff had no limitations with regard to manipulation, vision, communication, or environment. (AR 199-200). Dr. Lizarraras found that Plaintiff's postural limitations included climbing, balancing, stooping, kneeling, crouching, and crawling due to back strain.  (AR 199).  Dr. Lizarraras concluded that Plaintiff had frequent postural limitations, but no manipulative limitations.  (AR 202).  He found that Plaintiff's allegations are partially credible for arthritis.  (Id.).  However, the examination discovered no indication of significant liver disease and Plaintiff appeared capable of at least medium work.[1]  (Id.).

On December 26, 2006, Dr. G.D. Taylor-Holmes also completed a Physical RFC Assessment after reviewing the evidence in the file.  (AR

---

[1]  Medium level is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weight up to 25 pounds."  20 C.F.R. § 404.1567(c).

206-10).  Dr. Taylor-Holmes also found Plaintiff to have frequent postural limitations, but no limitations with regard to manipulation, vision, communication, or environment.  (AR 208-09).  In conclusion, Dr. Taylor-Holmes also found that Plaintiff could perform medium level work. (AR 210).

**C.    Subjective Complaints**

In his disability report, Plaintiff complained that he suffers from rheumatoid arthritis, Hepatitis C, a back injury, arthritis, and high blood pressure.  (AR 116).

On June 10, 2005, Plaintiff completed an Exertional Daily Activities Questionnaire.  (AR 125-27).  In the questionnaire, he complained of chronic joint pain, chronic hip pain, a metatarsal stress fracture to his right foot, dizziness, and difficulty sleeping because of pain.  (AR 125).  Plaintiff stated that to temporarily relieve pain he tries to "put in a mile or two of walking a day, [he] swim[s] and sit[s] in a hot spa . . . ."  (Id.).  Further, he stated that he "walk[s] to the grocery store, which is 3/4 of a mile."  (AR 126). However, Plaintiff also states in the same questionnaire that he does not do his own grocery shopping.  (Id.).

Plaintiff reported that he does not drive a car, clean his home, or do yard work even though he used to be able to.  (AR 126-27). Because of pain he is forced to rest every few hours. (AR 127).  He is only capable of sleeping for a few hours at a time because his pain causes substantial discomfort.  (Id.).

Testifying before the ALJ on January 23, 2008, Plaintiff stated that he has a tenth grade education and has worked in construction. (AR 21). Also, he testified he has not been able to eat correctly because of his sickness and, as a result, has lost weight. (Id.). He further testified that he last worked in 2001. (AR 23). He has sustained injuries from a car accident and has carpal tunnel syndrome. (AR 23-24). Plaintiff testified that, while in prison, he discovered that he had liver problems and also had broke his foot. (AR 35-36). He rates his pain at a level of seven or eight on a scale of one-to-ten. (AR 42). Generally, he complains about being depressed all the time, not being able to sleep well, not having sex, getting headaches, having herpes breakouts, and being unable to move properly. (AR 41).

## D.   Vocational Expert Testimony

Gregory Stewart Jones testified at the hearing as a vocational expert. (AR 53). Mr. Jones testified that Plaintiff's primary occupation is a "framing carpenter." (AR 54). Mr. Jones found that although Plaintiff's work is classified as "skilled", none of his skills are transferable to light work.[2] (Id.). Plaintiff's skills in "blue print reading" could be transferred to a building inspector occupation. (Id.). However, Mr. Jones testified that additional training would be required. (Id.).

---

[2] Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

When presented with a hypothetical employee matching Plaintiff's abilities and limitations, Mr. Jones found that this person could not perform Plaintiff's former work. (AR 56-57). However, Mr. Jones stated that there are jobs in the local, regional, or national economies for a person who can occasionally lift twenty pounds, can frequently lift ten pounds, can stand or walk for four hours of an eight-hour work day, can sit for six hours of an eight-hour work day, should be allowed to stretch, and can not have access to alcohol. (AR 57-58). These jobs include a small products assembler, a counter clerk, or a parking lot cashier. (AR 58-61).

## IV.

### FIVE STEP PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) - 404.1520(f)(1) & 416.920(b) - 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at

9

every step of the inquiry. <u>Id.</u> at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[4] age, education, and work experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing <u>Tackett</u>). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## V.

### THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 12-17). At the first step, the ALJ observed that Plaintiff has not engaged in substantial gainful activity since September 30, 2001. (AR 12). At step two, he found that Plaintiff's

---

[4]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

10

healed right foot fracture, arthritis, Hepatitis C, and hypertension qualified as severe impairments.  (Id.).

At the third step, the ALJ found that the severe impairments at step two did not meet or medically equal a listed impairment.  (Id.). Next, at step four, the ALJ found that Plaintiff has retained the RFC to perform light work "except he can occasionally stoop, bend, climb, kneel, crouch and balance.  He should be allowed to stretch 1-3 minutes in every hour.  He cannot operate motorized equipment, work around dangerous machinery or at heights.  He cannot perform security work or work with access to alcohol.  Mentally, [Plaintiff] can perform simple, routine and detailed work."  (AR 12-13).  Also, the ALJ concluded that Plaintiff is unable to perform any of his past relevant work.  (AR 15).

Finally, at step five, the ALJ concluded that Plaintiff could perform work that exists in significant numbers in the national economy. (AR 16).  Specifically, Plaintiff could perform the requirements of a small products assembler, a counter clerk, and a parking lot attendant. (Id.).  Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the decision.  (AR 17).

**VI.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error

11

or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff contends that: (1) the ALJ's RFC determination is invalid because of his failure to weigh the opinion of Dr. Jesus Lucas as a treating physician (Memorandum in Support of Plaintiff's Complaint ("Complaint Memo") at 2); (2) the ALJ failed to make proper credibility findings and to properly consider Plaintiff's subjective testimony (Id. at 8); and (3) the ALJ failed to properly consider the lay witness

12

1    testimony of Gail Wagner.  (Id. at 5).  The Court disagrees with
2    Plaintiff's contentions.

3

4    **A.    The ALJ's RFC Is Supported By Substantial Evidence In The Record**

5

6         Plaintiff contends that Dr. Lucas is Plaintiff's treating physician
7    and that the ALJ failed to properly consider Dr. Lucas's findings.
8    (Complaint Memo at 2).  Plaintiff asserts that the ALJ never mentioned
9    Dr. Lucas's opinion and that the ALJ never explicitly accepted or
10   rejected Dr. Lucas's opinion.  (Id. at 3).  Ultimately, Plaintiff
11   contends that because the ALJ failed to explicitly consider Dr. Lucas's
12   medical opinion, the ALJ's RFC determination is invalid.  The Court
13   disagrees.

14

15        Dr. Lucas's most significant detailed statement in the record is
16   found in the "Consent for Release of Information" form.  (AR 336).  Dr.
17   Lucas found that Plaintiff suffered from degenerative disc disease,
18   arthritis, and Hepatitis C.  (Id.).  Dr. Lucas checked-off the box that
19   indicated Plaintiff was unable to work, but also found that he did not
20   need care or supervision.  (Id.).  Dr. Lucas checked-off the box that
21   indicated Plaintiff would "benefit from job rehabilitation." (Id.).
22   The form does not include any information revealing the type of
23   examination performed by Dr. Lucas or how he reached his conclusions.
24   (Id.).  Other than listing Plaintiff's conditions and stating Plaintiff
25   that he is unable to work, the form merely contains routine information
26   about Plaintiff.  (Id.).

27

28

Although there are remaining records from Dr. Lucas, none of them offer more detailed information regarding his opinion of Plaintiff's impairments. It is questionable whether Dr. Lucas qualifies for treating physician status, as the records do not clearly demonstrate an ongoing treatment relationship. Plaintiff made a few visits to Dr. Lucas, for a variety of complaints, but the visits were infrequent and of limited duration.

Assuming arguendo that Dr. Lucas' check-off form is entitled to treating doctor weight, and assuming that the ALJ erred by failing to directly address it, the Court must decide if it was harmless error. Because more than substantial evidence exists in the record for the ALJ's opinion, the Court finds that even if the ALJ erred by failing to directly address Dr. Lucas's form opinion, the error was harmless. See Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1990)(harmless error applies to review of administrative decision regarding disability); Booz v. Sec'y of Health and Human Servs., 734 F.2d 1378, 1380-81 (9th Cir. 1984). Substantial evidence in the record ultimately supports the ALJ's RFC finding. See Carmickle v. Comm'r of Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

Dr. Sabourin, Dr. Lizarraras, and Dr. Taylor-Holmes each independently concluded, in detailed written opinions, that Plaintiff has a RFC for medium work with certain limitations. (AR 192, 202, 210). Specifically, each doctor concluded that in an eight-hour work-day Plaintiff could stand and walk for at least six hours, or sit for six hours. (AR 192, 198, 207). They agreed that Plaintiff's symptoms were somewhat disproportionate to his condition and that Plaintiff is

employable.  (AR 192, 202, 210).  The examinations conducted by the consulting physicians provide substantial evidence for the ALJ's findings.

Even if Dr. Lucas was a treating doctor, the ALJ's lack of reasons for rejecting his limited opinion was harmless error.  See Curry 925 F.2d at 1129.  Dr. Lucas's completed Consent for Release of Medical Information form, (AR 336), consisting mostly of a conclusory check-off-the-box form, did not deserve significant weight.  See Magallanes v. Bowen, 881 F.2d 747, 851 (9th Cir. 1989) (finding that the ALJ need not consider conclusory opinions); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion set forth in check-off reports that did not contain any explanation of the bases of their conclusions).

Dr. Lucas's conclusions are not supported by medical evidence found in the record.  For example, the evidence regarding Hepatitis C is unclear, at best.  (AR 14).  Dr. Landau specifically stated that the tests do not show Hepatitis C.  (AR 25).  The same can be said for the degenerative disk disease.  On January 24, 2002, an examination showed Plaintiff's "lumbar spine [was] normally aligned.  Vertebral body heights and intervertebral disc spaces [were] maintained.  No fracture or spondylolisthesis [was] evident." (AR 160).  Similarly, x-rays taken on July 24, 2006 of Plaintiff's back did not reveal any degenerative disk disease.  (AR 15, 27).

Accordingly, as Dr. Lucas's opinions are conclusory and are not consistent with medical evidence in the record, the ALJ was not obliged

15

1   to accept or credit Dr. Lucas's findings.  Magallanes, 881 F.2d at 851.

2   Where  conflicting  medical  evidence  is  present,  the  ALJ  has  the

3   responsibility of resolving the conflict.  See Andrews, 53 F.3d at 1039

4   (the ALJ is responsible for determining credibility, resolving conflicts

5   in  medical  testimony,  and  for  resolving  ambiguities).   Accordingly,

6   Plaintiff's claim does not warrant reversal or remand.

7

8   **B.    The ALJ Properly Rejected Plaintiff's Subjective Pain Testimony**

9

10      Plaintiff contends that the ALJ erred when he failed to provide

11  legally  sufficient  reasons  for  discrediting  Plaintiff's  testimony.

12  (Complaint Memo at 8).  As such, Plaintiff contends that reversal or,

13  in the alternative, remand is required.  The Court disagrees.

14

15      To determine whether a claimant's testimony regarding subjective

16  pain or symptoms is credible, an ALJ must engage in a two-step analysis.

17  First,  the  ALJ  must  determine  whether  the  claimant  has  presented

18  objective  medical  evidence  of  an  underlying  impairment  "which  could

19  reasonably be expected to produce the pain or other symptoms alleged.

20  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citing

21  Bunnell  v.  Sullivan,  947  F.2d  341,  344  (9th  Cir.  1991)  (en

22  banc))(internal quotation marks omitted).  The claimant, however, "need

23  not show that her impairment could reasonably be expected to cause the

24  severity of the symptom she has alleged; she need only show that it

25  could reasonably have caused some degree of the symptom."  Id. (quoting

26  Smolen, 80 F.3d at 1282).

27

28

16

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." Smolen, 80 F.3d at 1281.

If the ALJ only makes vague findings, i.e., the plaintiff's statements are not consistent with the medical evidence, then the ALJ has not satisfied his obligation to supply specific, clear, and convincing reasons. Vasquez v. Astrue, 572 F.3d 586,592 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to identify specific facts in the record that show that the claimant is in less pain than he claims. Id.

Here, Plaintiff testified regarding numerous ailments and the resulting symptoms. He stated that he needs the assistance of a walker or a cane because of the pain in his foot. (AR 23). Further, using a cane has become unmanageable because of carpal tunnel in his hand. (AR 23-24). Similarly, due to the condition in his hand Plaintiff has testified that he is unable to properly use his hand. (Id.). Plaintiff also reported that he is unable to walk more than one block without feeling pain. (AR 145). Regarding his back, Plaintiff stated it causes "excruciating pain" and that "even laying down gets irritating, so either I stand for a little bit, or I lay down." (AR 42).

Taking the record into consideration, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects

of these symptoms are not entirely credible." (AR 14). The ALJ's decision contains sufficient reasoning to show that he did not arbitrarily disregard Plaintiff's testimony.

The ALJ notes that Plaintiff testified as to his challenges with Hepatitis C and carpal tunnel syndrome. (AR 14). However, the ALJ also observed a lack of evidence to support Plaintiff's allegations concerning these conditions. (Id.). The ALJ found no support in the record for Plaintiff's claimed need for a cane. (Id.). Indeed, while in prison, Plaintiff was evaluated and then denied a cane because his ambulation was only "minimally impaired." (AR 26).[5] The ALJ noted that on examination dated July 25, 2006, Plaintiff had normal gait and straight leg raising. (Id.). Similarly, the grip strength test results of 60-65 pounds on his right hand and 50-55 pounds on his left hand, (AR 189), was proper grounds to disregard Plaintiff's alleged inability to properly grip objects.

A major complaint from Plaintiff is the "excruciating pain" caused by his back. (AR 42). However, numerous test results concluded there is minimal damage to his back. Plaintiff's back was found to be normal by a lumbar spine x-ray. (AR 160). An x-ray of the cervical spine revealed only mild osteoarthritis with no fractures. (AR 161).

_____

[5]   Plaintiff's testimony regarding his inability to walk more than a block was contradicted by an examination on July 25, 2006, which showed Plaintiff had normal gait and straight leg raising. (AR 189-190). Plaintiff's testimony regarding his walking ability was further undermined by his statement in his Daily Activities Questionaire that he "put[s] in a mile or two of walking a day," swims and sits in a spa. (AR 125).

Plaintiff's testimony was inconsistent with the record. Thus, it was proper for the ALJ to find Plaintiff's statements not credible. See Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(negative credibility finding properly based on contradiction between subjective complaints of pain and "normal" x-ray, CT scan, and myelogram results); see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)(claimant properly discredited because hearing testimony was inconsistent with medical evidence).

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. As a result, remand is not required.

**C.** **Because The Lay Witness Testimony Was Cumulative Of Plaintiff's Testimony, It Was Harmless Error For ALJ To Reject Without Express Reasons**

Plaintiff contends that reversal, or in the alternative, remand, is necessary because the ALJ failed to properly consider the testimony of Gail Wagner, Plaintiff's fiancé. (Complaint Memo at 8). More specifically, Plaintiff contends that the ALJ failed to provide germane reasons for disregarding relevant lay witness statements. The Court disagrees that a remand is necessary on this basis.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006); Smolen, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e). The ALJ may discount the testimony of lay witnesses only if she

gives "reasons that are germane to each witness." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)); see also Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

If an ALJ fails to expressly consider lay witness testimony, the court must determine whether the ALJ's decision remains legally valid, despite such error. Carmickle, 533 F.3d at 1162. If the ALJ's ultimate credibility determination and reasoning are adequately supported by substantial evidence in the record, no remand is required. Id. (citing Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

Ms. Wagner testified on Plaintiff's behalf on January 23, 2008. (AR 47-53). She stated that despite Plaintiff's trouble climbing stairs he often attempts to alleviate his back condition by going up and down a staircase. (AR 47). Also, Plaintiff is unable to help around the house, does not go out for dinner, does not cook, and is generally depressed because of his limitations. (AR 48). His pain makes him unable to clothe himself and consequently, he requires assistance. (AR 52). Ms. Wagner testified that Plaintiff is "not the same person as when [she] met him." (AR 52). Ms. Wagner testified that Plaintiff's back goes out, he sleeps a lot, does not want to eat, does not do chores anymore, does not drive, and does not have proper insurance to cover MRI costs. (AR 47-53). While each of these assertions were noted by the

ALJ, he did not explicitly accept or reject Ms. Wagner's testimony. (AR 14). Plaintiff contends that the ALJ's failure to offer express reasons to reject Ms. Wagner's testimony was error. (Complaint Memo at 7).

However, Ms. Wagner's statements essentially mirrored that of Plaintiff's own testimony and did not strengthen Plaintiff's impairment claims. Like Ms. Wagner, Plaintiff specifically testified that due to his pain he has trouble sleeping for more than a few hours. (AR 41, 51, 52). Plaintiff testified to all the same limitations noted by Ms. Wagner and the ALJ considered these limitations in his opinion. (AR 14). Specifically, the ALJ took into consideration that Plaintiff is unable to work in the same capacity with tools as he once did and he is often tired and sleeps through the day. (Id.). Ms. Wagner's statement failed to add any additional information for the ALJ to consider.

The ALJ's failure to give express reasons for rejecting Ms. Wagner's testimony was harmless error. This Court concludes that no reasonable ALJ would have reached a different decision based upon this evidence even if Ms. Wagner's statement were fully credited. See Stout, 454 F.3d at 1056 ("Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reach a different determination"). As discussed above, the ALJ rejected the testimony of Plaintiff because it was inconsistent with the record. By rejecting Plaintiff's testimony which mirrored that of Ms. Wagner, the ALJ implicitly rejected Ms. Wagner's testimony. No reasonable ALJ could be swayed by testimony that is identical to

21

testimony that has already been properly rejected.  The ALJ's decision was legally valid and supported by substantial evidence.  As the decision remains legally valid, it must be affirmed.  See Carmickle, 533 F.3d at 1162 (relevant inquiry for harmless error analysis in social security context is whether the ALJ's decision remains legally valid, despite error).

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on counsel for both parties.

DATED: September 13, 2010

_____/S/_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE